CARL H. DOUGLAS *vs.* N. G. LEIGHTON *et al.*

Argued April 12, 1893.    Decided May 5, 1893.

**Performance in the Manner Contracted for, Excused by Conduct.**

Plaintiff contracted to sell to defendants a quantity of saw logs at a specified price per 1,000 feet. He was to cut and bank them on a certain stream, where they were to be scaled by the surveyor general, whose scaling was to be conclusive as to the quantity. The logs were banked in such manner by the plaintiff, without necessity or excuse, so far as appears, that, as to about one third of the logs, the surveyor general, not being able to see and scale them, only "averaged" or estimated them, and so indicated in his scale bill. *Held*, that the plaintiff, having contracted to bank the logs with reference to their being scaled, was required to do so in such manner that they could be scaled, and the *averaging* of the logs, instead of a scaling, being attributable to his own fault, he cannot insist upon the conclusiveness of the "averaged" scale bill, nor rely upon a custom in the measurement of logs to estimate or average logs which could not be seen. But, the defendants having received the logs and the "averaged" scale bill without objection, the plaintiff may show that the quantity banked was actually equal to the amount set down in the scale bill, and for which he seeks to recover payment.

Appeal by plaintiff, Carl H. Douglas, from an order of the District Court of Hennepin County, *Henry G. Hicks*, J., made December 10, 1892, denying his motion for a new trial.

Action to recover of Nathaniel G. Leighton and others, partners, a balance of $1,531.57 for saw logs sold and delivered. On February 19, 1886, plaintiff contracted with defendants to cut and bank about 2,000,000 feet of white pine saw logs during that winter on the Little Prairie River in Carlton County. They were to be there scaled by the Surveyor General. This scaling was to be taken and accepted by the parties as the true and final measurement of the logs. Plaintiff was then to float or "drive" the logs down the stream in the spring freshets, and deliver them in the boom at Minneapolis, and was to be paid therefor $7.00 per thousand. The logs were so piled on the banks and in the stream that it was impracticable for the Deputy Surveyor to inspect and measure many of them, and those he estimated or averaged. Defendants knowing this, accepted and sawed the logs, sold the lumber, and paid plaintiff on account, $11,145.85.

The issues were tried October 31, 1892. After the evidence of the plaintiff had been received, the defendants moved the Judge to direct the jury to return a verdict for the defendants. This was done, and plaintiff excepted, moved for a new trial, and being denied, appeals.

*Chas. P. Barker,* for appellant.

The defendants, with full knowledge, in April, 1886, of the manner of this scaling, accepted the logs, began sawing them before July, honored the scale by paying installments on the contract in accordance with its terms up to November, when the logs had been sawed up and sold, and could not be re-scaled. All this seven months they maintained absolute silence as to the manner of scaling. This was evidence upon which a jury could say defendants were estopped to dispute the scale. These facts showed an election by defendants to waive whatever objection they might have had to the scaling as made. *Reid* v. *La Due,* 66 Mich. 22; *Swayze* v. *Carter,* 41 N. J. Eq. 231.

He who remains silent when he ought to have spoken, "will not be permitted to speak when he ought to keep silent." *Pratt* v. *Ducey,* 38 Minn. 517.

By instructing the jury to find for defendants, the Judge held there was no estoppel, no waiver, and the scale bill did not show such

a scale as the contract contemplated.   If this scale was conclusive, then we had a right to recover on it.   If it was not conclusive, then we had a right to prove another bank scale.   The scale bill was, in any event, evidence of the number of logs.   And if it was not evidence of the number of feet contained in that part of them which were "averaged," then we had a right to prove that fact.   *Bailey* v. *Blanchard*, 62 Me. 168.

*Healy & Miller*, for respondents.

The complaint alleges the sale and delivery of 9,101 logs, amounting to 1,811,060 feet, at the agreed price of $7.00 per thousand feet. It further alleges a compliance with all the terms and conditions of the contract.   It admits the payment of $11,145.85.   It also alleges that when the logs were banked, the Surveyor General scaled the logs as in the contract provided.   The answer denies that plaintiff complied with or performed the conditions of the contract, and puts in issue the alleged scaling.   It alleges that the actual quantity of logs scaled on the bank did not exceed 6,824 logs, amounting to 1,357,950 feet, and estimated the balance, and that defendants refused to be bound by the estimate of the Surveyor General and had all the logs scaled in the boom, ascertained their quantity to be 1,502,720 feet, and no more.   Defendants have overpaid plaintiff according to the boom scale.   *Pratt* v. *Ducey*, 38 Minn. 517.

Upon the trial plaintiff attempted to show a waiver.   This offer was objected to, and the objection properly sustained, no waiver having been pleaded.   *Murphy* v. *Sherman*, 25 Minn. 196.

Plaintiff also attempted to show an estoppel.   No facts constituting an estoppel were pleaded, and the court very properly sustained the objection to the evidence.   *Buck* v. *Millford*, 90 Ind. 291; *Warder* v. *Baldwin*, 51 Wis. 450.

From the record, it is plain that there was no estoppel or waiver, and that the scale bill did not show a scale as the contract contemplated.

DICKINSON, J.   This is an action to recover the purchase price of a quantity of saw logs sold by the plaintiff to the defendants.   The controversy is as to the quantity of the logs sold and delivered, and whether the quantity, as claimed by the plaintiff, has been deter-

mined in the manner contemplated by the contract of sale. The contract was in writing. The defendants were to pay a stated price per 1,000 feet. The contract provided that the logs were "to be cut, banked, and scaled during the present winter by said Douglas (plaintiff) on the Little Prairie river, in Carlton county, Minnesota. * * * Said scaling is to be done by the surveyor general when said logs are banked, and his scaling is to be taken and accepted by said parties as the true and final measurement of said logs." The plaintiff was to drive the logs down the streams, and deliver them within the limits of the Mississippi & Rum River Boom Company's booms at Minneapolis. The defendants received the logs so driven down by the plaintiff, and sawed them into lumber.

To show an official scaling of the logs, the plaintiff presented in evidence an official scale bill from the surveyor general's office, referring to the logs as having been "scaled by Deputy Peter Lavalle," at Little Prairie river, from which it appeared that there were 6,824 logs, containing 1,357,950 feet. There was the further item, designated in the scale bill as "averaged," of 2,277 logs, set down as containing 453,110 feet. The plaintiff seeks to recover for the whole amount thus stated,—1,811,060 feet. The defendants claim that the logs did not exceed in amount 1,502,720 feet, and that they were not concluded by the official scale bill as to the logs there appearing to have been "averaged."

There was testimony on the part of the plaintiff corroborating what appears, or may be inferred, from the scale bill, that in fact the surveyor only scaled the 6,824 logs; that whatever other logs may have been there they were so buried under the ice, or perhaps under the other logs, that he could not scale them, and that the 2,277 logs set down in the bill as "averaged" were not seen by the surveyor, and of course could not have been measured or intelligently estimated by him. The plaintiff offered no evidence excusing himself from fault in having the logs banked in such manner that about one third of them, according to his claim as to quantity, could not be scaled.

Under the circumstances of the case the court was right in refusing to allow the plaintiff to show a *custom* of the surveyor general, which also lumber men have accepted and acted upon, to determine by counting and averaging the quantity of logs so covered up that

they could not be scaled.  We do not mean to say that estimates may not be made under some circumstances where complete measurements are impracticable.  We are speaking with reference to this case.  The contract obligation of the plaintiff to cut and bank the logs contemplated, as a purpose in view, the scaling of the logs on the bank by the surveyor general as the means for determining conclusively the quantity for which the defendants were to pay. It was therefore incumbent on the plaintiff to so bank the logs, so far as that could reasonably be done, that they might be scaled. The statute with reference to the scaling of logs by the proper officer contemplates actual inspection and measurement by him, and mere estimates from uncertain data or information are not authorized, unless, at least, there is some necessity for it.   The plaintiff had no right, under the terms of this contract, to unnecessarily render it impossible for the officer, whose scaling was to be final between them, to measure, or even to intelligently estimate, a large proportion of the logs.   Upon the case as presented the scale bill was not evidence of the quantity of logs "averaged."  See *Pratt* v. *Ducey*, 38 Minn. 517, (38 N. W. Rep. 611.)   Proof of a custom in general to estimate where measurement is impracticable would not have made a case for the plaintiff under the circumstances stated.

But in another particular we think there was error.  The defendants stood in a position which may well have been regarded as rendering them responsible for the amount of logs actually banked by the plaintiff, and all of which, as the evidence tended, to show, were driven down to Minneapolis, and delivered to them as provided by the contract.   They may be supposed to have known that the determination by the surveyor general as to the logs banked was in part "averaged," and there is evidence that they received and sawed the logs, making no objection until long afterwards.   It might well have been found that they waived their right to insist upon a scaling on the bank.   If so, the plaintiff may still hold them to liability for the actual quantity of logs sold and delivered to them. We do not see that the principle of estoppel is applicable to preclude them from disputing the sufficiency of the scaling evidenced by the "averaged" scale bill.   But the plaintiff offered to show the actual number and quantity of the logs under the ice, and not scaled by the surveyor general, and that they were driven down with the rest.

We think that the plaintiff should have been allowed to prove, as he attempted to do, the actual amount of the logs.    For the excluding of this evidence the order refusing a new trial must be Reversed.

VANDERBURGH, J., was absent on account of sickness.

(Opinion published 54 N. W. Rep. 1053.)